IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES E. HOPKINS, | ) | |
| | ) | Case No. 05 C 0713 |
| Plaintiff. | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| PRUDENTIAL INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

James E. Hopkins ("Mr. Hopkins" or "Plaintiff") brings this action against Prudential Insurance Company of America ("Prudential" or "Defendant"), the claims administrator for the Bank One Corporation Health and Welfare Benefit Options Plan ("the Plan"). Plaintiff alleges that Prudential wrongfully denied him long-term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*, ("ERISA"). (D.E. 1 at 1-2.)[1] Prudential filed a counterclaim, seeking restitution for LTD benefits wrongly paid to date and, alternatively, restitution for offset of those benefits paid in the amount of estimated Social Security Disability Benefits ("SSDBs") that Plaintiff may have been entitled to receive. The parties have filed cross-motions for summary judgment on all claims.

Prudential determined that Plaintiff, as a rehired employee, was ineligible for LTD benefits under the Plan's pre-existing condition provisions. Because the Plan did not clearly reserve to Prudential the authority to determine eligibility for benefits and construe the terms of the Plan, this Court reviews Prudential's denial of benefits de novo. Reviewing that decision, the Court finds that the Summary Plan Description ("SPD") failed to comply with the requirements

---

[1] The docket entries in this case are cited as "D.E. __."

of 29 U.S.C. § 1022 in regard to pre-existing conditions for re-hired employees and Prudential thus is estopped from denying benefits to Plaintiff. Prudential also is estopped from denying benefits because Plaintiff relied on the rehire provision in the SPD, a provision that conflicts with the Plan. Prudential's counterclaim for benefits wrongly paid to date is denied accordingly. Finally, Prudential's counterclaim for offset of those benefits paid in the amount of estimated SSDBs that Plaintiff may have been entitled to receive is granted to the extent that Mr. Hopkins is required to make a claim for SSDBs to avoid the offset.

### Factual Background

Mr. Hopkins first became a Bank One employee on March 28, 1999. (D.E. 33, ¶ 1.) As a Bank One employee, Mr. Hopkins was insured under Group Insurance Policy No. DG-56249-IL ("the Plan"), which Prudential issued to Bank One and which is governed by ERISA. (*Id.*, ¶ 2; D.E. 33, ¶ 55; R. at 1-57.) The Plan includes a LTD provision, under which employees may opt to increase LTD coverage once they have become eligible for basic coverage. (*See* R. at 28.)[2] Mr. Hopkins' initial effective date for LTD coverage was August 1, 1999. (D.E. 34, ¶ 22; R. at 93.) Mr. Hopkins worked at Bank One until November 2, 1999, when he was laid off. (D.E. 34, ¶ 8.) Bank One hired Mr. Hopkins again on November 27, 2000. (*Id.*, ¶ 9.) During the intervening period, Mr. Hopkins was not a Bank One employee and no LTD premiums were paid for him. (D.E. 34, ¶ 37.)

Prudential's phone and computer records indicate that in 2000 Mr. Hopkins had LTD coverage and he elected and paid for increased LTD coverage of 20% over the basic coverage. (*See* R. at 83, 98, 252.) Those phone records also indicate that Prudential informed Mr. Hopkins that, due to changes in the Plan, his increased coverage was reduced back to the basic (50%)

---

[2] The Administrative Record is cited as ("R. ___").

level on January 1, 2001, and that Mr. Hopkins was "very upset with the bank because he has been paying for this coverage." (R. at 83.)

Mr. Hopkins' last day of employment at Bank One was April 27, 2001. (D.E. 33, ¶ 2; R. at 241.) Shortly thereafter, he applied for LTD benefits under the Plan. (D.E. 33, ¶¶ 4, 6.) Prudential denied Mr. Hopkins' initial application for LTD benefits on December 10, 2001. (*Id.*, ¶ 9.) Pursuant to the Plan, Mr. Hopkins appealed that decision three times, and Prudential denied LTD benefits, or awarded only limited LTD benefits, in three subsequent decisions dated March 25, 2002, August 26, 2003, and July 29, 2004, respectively. (*Id.*, ¶¶ 17, 22-27, 31-32, 36, 39-41.) The following is a summary of Mr. Hopkins' appeals and Prudential's four decisions regarding his request for LTD benefits:

**Prudential's First Decision**:

In its December 10, 2001 decision denying benefits, Prudential stated that the Pre-Existing Condition provision barred Mr. Hopkins' claim because he had stopped working due to disability within twelve months of the date he had elected LTD coverage. (D.E. 34, ¶ 18.) Prudential defined the six-month pre-existing condition period as October 1, 2000 to March 31, 2001. (*Id.*) Because Mr. Hopkins had, during that period, experienced symptoms "for which an ordinarily prudent person" would have sought medical treatment (namely, severe anxiety) the "prudent person pre-existing provision" applied to deny him LTD benefits. (*Id.*)

**Mr. Hopkins' Appeal; Prudential's Second Decision**:

In its March 25, 2002 decision, Prudential reiterated its finding that, during the pre-existing condition period, Mr. Hopkins suffered from stress and anxiety for which an ordinarily prudent person would have sought treatment. (D.E. 34, ¶ 20.) Prudential cited Mr. Hopkins' medical records to support its denial of benefits. (*Id.*)

**Mr. Hopkins' Second Appeal; Prudential's Third Decision**

On March 12, 2003, Bank One notified Prudential that, because Mr. Hopkins was first hired on March 28, 1999, his benefits bridged back to that initial hire date and the effective date of his LTD coverage was August 1, 1999. (D.E. 34, ¶ 22.) Based on this new information, Prudential notified Mr. Hopkins' attorney that the pre-existing provision did not apply and they would review the claim from a medical standpoint. (*Id.*, ¶ 23; D.E. 33, ¶¶ 28-30.) Prudential then requested and received certain medical records from the relevant periods (D.E. 34, ¶¶ 24-26), and undertook two clinical reviews thereof. (*Id.*, ¶¶ 27, 29.) Prudential contacted Mr. Hopkins' therapist, Ms. Olsen, and his treating psychiatrist, Dr. Trumm, regarding his ability to work. (*Id.*, ¶¶ 30-31.) Prudential states that Ms. Olson indicated that Mr. Hopkins could have worked during "all of 2002," and Dr. Trumm could not see why he was "not working." (*Id.*, ¶¶ 30-32.)

On August 26, 2003, Prudential issued its third decision letter, noting that "Mr. Hopkins' previous employment with Bank One was confirmed, rendering the pre-existing provision inapplicable." (D.E. 33, ¶ 33; R. at 108.) Prudential approved LTD benefits for the period prior to January 31, 2002, but denied benefits for the period thereafter. In its letter, Prudential noted a lack of evidence concerning any disabling psychiatric symptoms after January 31, 2002. (D.E. 33, ¶ 31; D.E. 34, ¶ 32; R. at 107-10.) Prudential subsequently paid benefits totaling $9,588.01 for the closed period of October 26, 2001 to January 31, 2002. (D.E. 34, ¶¶ 32-33.)

**Mr. Hopkins' Third and Final Appeal; Prudential's Fourth Decision**

Mr. Hopkins filed a third and final administrative appeal on October 24, 2003, requesting information pertaining to issues raised in the previous denial. (D.E. 34, ¶ 35.) On July 16, 2004, Mr. Hopkins submitted a letter from Dr. Trumm, who stated that his prior statements had been

misconstrued and that he did not believe that Mr. Hopkins could resume his former duties at Bank One. (*See id.*; D.E. 33, ¶ 38; R. at 156.) Mr. Hopkins' counsel posited that Dr. Trumm's previous answer merely indicated that Mr. Hopkins might be capable of other work. (D.E. 33, ¶ 37; R. at 160.)

In its July 29, 2004 final decision letter, Prudential denied Mr. Hopkins' claim for LTD benefits, finding that he had a pre-existing condition for which an ordinarily prudent person would have sought treatment. Prudential supported its finding by pointing to previously cited medical evidence (Dr. Shah's and Dr. Lozano's notes), as well as to a psychological evaluation indicating a 6-month history of anxiety attacks. (D.E. 34, ¶ 38.)

Prudential acknowledged its prior finding that the pre-existing condition did not apply, but identified information subsequently obtained from Bank One that Mr. Hopkins had been terminated on November 2, 1999, that he had not been a Bank One employee from that date until November 27, 2000, and that "LTD premiums were not paid for him for this period." (R. at 101-02; D.E. 34, ¶ 38.) Prudential concluded that, under the terms of the Plan, his LTD coverage had ended when he had been terminated as an employee, and he only became eligible for LTD coverage again on April 1, 2001: after his rehire on November 27, 2000 and "after fulfilling the Employment Waiting Period (EWP) of the first of the month after 120 days of employment." (D.E. 34, ¶ 38.) Thus, as a newly covered employee, his claim was subject to the pre-existing condition provision. (*Id.*) Prudential noted that, as a consequence, it had previously paid Mr. Hopkins a closed period of LTD benefits in error, though it declined to seek reimbursement at that time. (*Id.*, ¶ 38.)

**Relevant Provisions of the Prudential Plan and the Summary Plan Description**

Employees do not automatically receive a copy of the Plan, but can review a copy thereof by visiting Bank One offices in Ohio or requesting a copy of the Plan in writing. (R. at 292.) Pursuant to 29 U.S.C. § 1022, employees receive a copy of the Summary Plan Description ("SPD"). The SPD summarizes the Plan, but it is not listed within the Plan as one of the documents comprising the Plan. (*See* D.E. 44, ¶ 2; R. at 9.) The SPD provides that:

> This document is not a contract . . . [it] describe[es] the highlights of the Bank One Corporation Short-term Disability Plan and Long-term Disability Plan . . . and is subject to the terms and conditions of the Plans, which govern the operations of the Plans. In the event this summary differs in any way from the Plans, the actual terms of those documents will govern . . . [t]his summary doesn't replace or control the legal Plan document. In the event of a discrepancy . . . the Plan document always governs.

(D.E. 44, ¶ 2; R. at 292.) The SPD also states that, "effective January 1, 2001, [it] replaces and supersedes any and all prior explanations and SPDs." (R. at 272.)

In regard to discretionary authority, the Plan states that, "[w]e may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor." (D.E. 44, ¶ 1.) The SPD states that, "Bank One has delegated to Prudential all discretionary authority to interpret the Plan and to make appropriate determinations regarding eligibility for and the amount of benefits." (D.E. 28, ¶ 39.)

In regard to disability, the Plan defines a claimant as disabled when he is unable "to perform the material and substantial duties of [his] regular occupation." (D.E. 34, ¶ 40.)

In regard to the pre-existing condition limitation on LTD coverage, the Plan contains the following provisions:

> [The Plan does] not cover a disability which: begins within 12 months of the date your coverage under the plan becomes effective; and is due to a pre-existing condition . . .

You have a pre-existing condition if . . . in the 6 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available . . .

1. You have received medical treatment, consultation, care or services including diagnostic measures . . . or

2. You had symptoms for which an ordinarily prudent person would have consulted a health care provider[.]

(*Id*., ¶ 47.) The Plan also states:

**How Does the Pre-Existing Condition Work if You Were Covered Under Your Employer's Prior Plan?**
•[If] this [LTD] plan replaces your Employer's prior plan and:
•you were covered by that [prior] plan on the day before this [new] plan became effective; and
•you became covered under this plan within thirty-one days of its effective date[:]
. . . If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the employer's prior plan.

(R. at 46 (emphasis original).) The SPD contains the following provisions relevant to the pre-existing condition limitation:

**Pre-existing conditions (Note: this section applies to all new employees [and] current employees who haven't been covered under a Bank One LTD Plan for at least 12 months)** . . .

**If you had LTD coverage prior to January 1, 2001 for more than 12 months**, the pre-existing condition exclusion will *not* apply to you unless you elect to increase your coverage . . .

**Actively-at-Work Rules**
There are no pre-existing condition exclusions after you've had 12 months of LTD coverage, as long as you're actively-at-work.

(R. at 283-84 (emphasis original).)

In regard to dates of LTD coverage and modifications thereto, the Plan states that "[i]f you are on a temporary layoff, and if premium is paid, you will be covered to the end of the

month following the month in which your temporary layoff begins." (D.E. 34, ¶ 44 (emphasis omitted).) "Temporary layoff" is defined as "temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer . . . ." (R. at 32.) Also, "coverage under the [Plan] ends on . . . [t]he last day you are in active employment[.]" (D.E. 34, ¶ 43.) The Plan does not contain any provision referring to "rehired employees."

In regard to dates of LTD coverage and modifications thereto, the SPD provides that a salaried employee becomes eligible for LTD benefits on the first day of the month following 120 days of service. (D.E. 44, ¶ 3.) Further, in the section titled in bold letters, "Long-Term Disability Overview . . . **When Coverage Begins**," the SPD states that "[i]f you are a *rehired employee*, your LTD eligibility is calculated using your adjusted service date, not your latest date of hire." (*Id.*, ¶ 3 (emphasis original).) Although the term "adjusted service date" is not defined in either the Plan or the SPD, Bank One and Prudential interpret this term as the date the employee initially was hired. (D.E. 34, ¶¶ 22-23.) Neither the Plan nor the SPD defines the term "rehired employee." (R. at 1-57, 272-300.) The SPD's end-of-coverage provision on LTD states that "[y]our LTD coverage will end on the date: [y]ou don't make a required premium payment[; y]our employment status changes and you become ineligible for coverage[; or y]our employment with Bank One terminates[.]" (R. at 286.)

In regard to the amount of LTD benefits due, the Plan limits lifetime payments of LTD benefits for disability caused by mental illness to 24 months. (D.E. 34, ¶ 42.) The parties agree this provision applies to Mr. Hopkins. The parties also agree that, if Mr. Hopkins were entitled to LTD benefits, he would be entitled to $2,566.67 per month (D.E. 33, ¶ 8.) To date, Prudential has paid Mr. Hopkins three months of LTD benefits, totaling $9,588.01. (D.E. 34, ¶ 33.) From this total, the Plan allows Prudential to subtract any deductible sources of income, which include

SSDBs to which the claimant is entitled as a result of his disability. (*Id.*, ¶ 45.) If SSDBs have not been awarded, but Prudential "determine[s] that [the claimant] may qualify" for such benefits, Prudential may deduct the estimated amount of SSDBs from any LTD benefits due under the Plan." (*Id.*, ¶ 45.) Prudential will not deduct estimated SSDBs, however, if the claimant does the following: 1) applies for benefits; 2) appeals any denial to all administrative levels Prudential feels are necessary; and 3) signs Prudential's Reimbursement Agreement form, promising to pay Prudential any overpayment caused by an award. (*Id.*, ¶ 45.) The Plan gives Prudential "the right to recover any overpayments due to . . . any error Prudential makes in processing a claim; and your receipt of deductible sources of income." (*Id.*, ¶ 46.) There is no evidence in the record that Mr. Hopkins has applied for or received SSDBs, and Prudential did not deduct actual or estimated SSDBs when it paid Mr. Hopkins LTD benefits. (*See id.*, ¶ 33; D.E. 31, ¶ 23.)

## DISCUSSION

This Court's review of a motion for summary judgment on a claim for wrongful denial of benefits under ERISA involves several levels of analysis. First, the Court must determine whether Prudential's decision to deny benefits is subject to the de novo or arbitrary and capricious standard of review. *See Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 538 (7th Cir. 2000). Second, the Court must determine if there is a genuine issue of material fact as to whether the decision to deny benefits satisfies the applicable standard. *See Dade v. Sherwin-Williams Co.,* 128 F.3d 1135, 1144 (7th Cir. 1997).

## I.     The Standard of Review under ERISA

The Court will review the Plan Administrator's denial of benefits de novo unless the benefit plan gives the plan administrator clear discretion to construe policy terms and the

eligibility for benefits.[3]  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989);

*Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 331 (7th Cir. 2000).  If clear discretion has been

granted, the decision to deny benefits is reviewed under an arbitrary and capricious standard.  *See*

*Firestone,* 489 U.S. at 115;  *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2005).

A plan confers clear discretionary authority when it contains the following safe harbor language

articulated in *Herzberger*: "Benefits under this plan will be paid only if the plan administrator

decides in his discretion that the applicant is entitled to them." *Herzberger*, 205 F.3d at 331. Yet,

neither the safe harbor language nor other "magic words" are mandated so long as the plan

language gives the employee adequate notice that the plan administrator "has the latitude to

shape the application, interpretation, and the content of the rules in each case." *Diaz v.*

*Prudential*, 424 F.3d 635, 637-39 (7th Cir. 2005).  Language that merely gives the employee

notice that the plan administrator may make judgments within the confines of preset standards

does not constitute a clear grant of discretion.  *Id.* at 639.

## A.    The Plan Language Does Not Confer Discretion.

Prudential argues that the Plan language that "[w]e may request that you send proof of

continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a

doctor," confers discretionary authority.  The plan in the Seventh Circuit's recent decision, *Diaz*

*v. Prudential*, 424 F.3d 635 (7th Cir. 2005), contained, word for word, the exact same discretion-

granting language as the Plan here.  *See id.* at 638.  The court found that the plan did not confer

discretionary authority because the given language did not suggest the administrator's discretion

---

[3] Arguably, certain ERISA issues, such as whether the SPD complies with ERISA requirements and whether the plan and the SPD conflict, are questions of law that are always subject to de novo review.  *See Williams v. Midwest Operating Eng'rs Welfare Fund*, 125 F.3d 1138, 1140 (7th Cir. 1997); *Doyle v. Local 25, S.E.I.U.*, 1999 WL 1044206, *6 (N.D. Ill. 1999).  Since this Court finds that the Plan language does not confer clear discretion on Prudential to construe the terms of the Plan, *see infra*, all Prudential's decisions are reviewed de novo regardless.

in regard to the determination of disability, but merely the form of proof to be submitted. *Id.*

Based on *Diaz*, this Court must find that the Plan language does not confer discretion.

**B.     The SPD Cannot Expand On The Discretion Given In The Plan Itself.**

Prudential also argues that the SPD clearly confers discretionary authority warranting a

deferential standard of review.  The SPD states that, "Bank One has delegated to Prudential all

discretionary authority to interpret the Plan and to make appropriate determinations regarding

eligibility for and the amount of benefits."  Although SPD may contain unambiguous discretion-

granting language, that language is not determinative because "[t]he language of the plan is what

controls; a summary plan description cannot be used to expand discretion given under [the]

plan." *Akhtar v. Continental Cas. Co.*, 2002 WL 500544, *4 (N.D. Ill. 2002), citing *Health Cost

Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999); *see also Reinertsen v.

The Paul Revere Life Ins. Co.*, 127 F. Supp. 2d 1021, 1029 (N.D. Ill. 2001) ("In the context of

granting authority to a plan administrator, unless the policy affirmatively grants discretion, then

de novo review applies, even if the [summary plan description] provides otherwise").  Thus, an

SPD cannot grant the clear discretion necessary to invoke a deferential standard of review when

the plan itself is silent or fails to satisfy the *Herzberger* test. *See, e.g., Wolff v. Continental

Casualty Co.*, 2004 WL 2191579, *11 (N.D. Ill. 2004); *Bolden v. Unum Life Ins. Co. of Am.*,

2003 WL 921764, *3 (N.D. Ill. 2003); *Billings v. Continental Cas. Co.*, 2003 WL 145420, *6

(N.D. Ill. 2003); *Flood v. Long Term Disability Plan for First Data Corp.*, 2002 WL 31155099,

*3-4 (N.D. Ill. 2002); *Akhtar v. Continental Cas. Co.*, 2002 WL 500544, *4 (N.D. Ill. 2002);

*Carter v. General Electric Co.*, 2001 WL 170464, *5 (N.D. Ill. 2001).[4]  "These decisions rely on

---

[4] In *Schwartz v. Prudential Ins. Co.*, 2005 WL 576857  (N.D. Ill. 2005), the court looked at language identical to that
in the case at bar and found that the plan itself conferred discretion. *Id.* at *12-13.  Thus, reading the SPD in tandem with
the plan, the court found no conflict between the two. *Id.* at *11-13.  In light of *Diaz*, the Plan language can no longer
be read to confer discretion and a conflict exists. *See also Olsen v. Comfort Systems USA Short Term Disability Plan*,

the principle that the benefit plan sets the terms of the relationship between it and the participants and the summary cannot expand the administrator's authority." *See also Olsen v. Comfort Systems USA Short Term Disability Plan*, 407 F. Supp. 2d 995, 1006 (W.D. Wis. 2005). Because the Plan here fails to grant clear discretion under the *Herzberger* standard, any grant of discretion in the SPD is irrelevant.

Prudential cites to *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452 (7th Cir. 2005), as authority for the proposition that auxiliary plan documents can grant an administrator discretion. In *Shyman*, a certificate of insurance was held to confer discretionary authority where it was expressly included as "*part* of the policy." *Id*. at 455 (italics original). In contrast, the SPD here expressly states that it is not part of the plan and it is not listed in the documents comprising the Group Contract. *See Bolden*, 2003 WL 921764, *3 (finding plan governed despite grant of discretion in certificate of insurance where the certificate contained such a disclaimer); *Akhtar*, 2002 WL 500544, *4 (refusing to rely on SPD language for grant of authority when "the language of the summary plan description states that the information it contains is not a part of the policy itself").

Thus, because neither the Plan itself nor any document expressly incorporated into the Plan contains the necessary grant of discretion to Prudential, this Court reviews Prudential's construction of the Plan and its decision to deny benefits de novo.

## C.    De Novo Review of ERISA Claims

Because an ERISA plan is a contract, standard rules of contract interpretation apply. *Ruttenberg*, 413 F.3d at 659. With ERISA insurance contracts particularly, the court must interpret the policy in "an ordinary and popular sense as would a person of average intelligence

---

407 F. Supp. 2d 995, 1006 (W.D. Wis. 2005) (disagreeing with conclusion in *Schwartz* that no conflict existed).

and experience." *Phillips v. Lincoln Nat'l Life Ins. Co.,* 978 F.2d 302, 308 (7th Cir. 1992). The court also must strictly construe ambiguous contract terms in the insured's favor, though it will not create ambiguity where there is none. *Id.* The admitted result of these rules is that courts generally construe benefit plans in favor of beneficiaries and against plan administrators. *See Herzberger*, 205 F.3d at 330; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890 (1983) (stating that the purpose of ERISA is "to promote the interests of employees and their beneficiaries in employee benefit plans".)

## II. Prudential Is Estopped from Denying Benefits

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.(c). The Court considers cross-motions for summary judgment from a "Janus-like" perspective, examining each party's motion in turn and construing all inferences in favor of the party against whom the motion under consideration is made. *See Buttitta v. City of Chicago,* 803 F. Supp. 213, 217 (N.D. Ill. 1992), *aff'd,* 9 F.3d 1198 (7th Cir. 1993). A claim for benefits under ERISA particularly is suited to summary judgment disposition because it is a matter of contract interpretation. *See Bechtold v. Physicians Health Plan of N. Ind. Inc.*, 19 F.3d 322, 325 (7th Cir. 1993).

The parties dispute whether the Plan's pre-existing condition provision applies to Mr. Hopkins. That provision states that "[the Plan does] not cover a disability which: begins within 12 months of the date your coverage under the plan becomes effective; and is due to a pre-existing condition." Prudential argues that, under the Plan, the period Mr. Hopkins did not work for Bank One altered his LTD effective coverage date and thus, he is subject to the pre-existing

condition provision. Mr. Hopkins responds that, under the terms of the SPD, this period did not affect his LTD effective coverage date because he is a "rehired employee," and, because the Plan and the SPD conflict, the terms of the SPD should govern, making the pre-existing condition provision inapplicable to his claim.

A two-part framework is used to analyze alleged conflicts between a plan and an SPD. *See Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1998). First, before examining any alleged conflicts between the two, the Court must determine whether the SPD satisfies the disclosure requirements set forth of 29 U.S.C. § 1022. *Id.* at 1022. In making this determination, the Court need not consider whether the terms of the plan clarify or contradict the terms of the SPD. *Id.* at 1022 n.4. If the SPD fails to satisfy § 1022, "a court may estop a plan administrator from denying coverage for terms not included in the SPD." *Id.* If, however, the SPD does satisfy § 1022, then the court proceeds to the second prong, which entails looking at both the SPD and the plan to determine whether there is a direct conflict between the two. *Id*. at 1022-24. If there is a direct conflict, the claimant can rely on the terms in the SPD to estop the plan administrator from denying coverage based on the plan. *Id.* at 1024.

This Court finds that, in regard to pre-existing conditions for re-hired employees, the SPD failed to comply with the requirements of 29 U.S.C. § 1022, and therefore, Prudential is estopped from denying benefits on that ground. Alternatively, because the language of the SPD regarding the coverage of pre-existing conditions for rehired employees conflicts with the Plan, Mr. Hopkins was entitled to rely on the SPD and the plan administrator is estopped from denying coverage on this ground as well. Accordingly, Mr. Hopkins was entitled to LTD benefits, subject to limitations discussed in the remedies section of this opinion.

**A.      The SPD Does Not Satisfy 29 U.S.C. § 1022.**

The SPD does not satisfy the minimum requirements of § 1022.  A SPD is intended to provide a "a capsule guide in simple language." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1048 (7th Cir. 2004).   And while it need not address every contingency concerning benefits or every detail concerning only a few people, it must specify among other things, "the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  29 U.S.C. § 1022; *see Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir. 1996) ("The plan summary is not required to anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status").   In providing this information, an SPD must be written "in a manner calculated to be understood by the average plan participant" and it must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  *Id*. at (b).

The question in this case is whether the Plan's provisions regarding the coverage of pre-existing conditions for rehired employees were sufficiently accurate and comprehensive to reasonably apprise Mr. Hopkins of his rights and obligations.  On this point, *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000) is apposite.  In *Bowerman*, the claimant, a rehired employee, believed that a pre-existing condition limitation would not apply to her due to the insurer's longstanding policy of immediately reinstating benefits to rehired employees.  *Id.*  The court found that the SPD failed to clearly apprise persons in the claimant's  position that the pre-existing condition limitation would apply to them.  *Id.*   The failure of the SPD to explain

adequately when a rehired employees would be subject to the pre-existing condition provision meant that the SPD did not satisfy § 1022. *Id.*

Similarly here, the average person would not read the pre-existing condition limitation on LTD benefits as applying to rehired employees. The SPD states that, "[i]f you are a *rehired employee*, your LTD eligibility is calculated using your adjusted service date, not your latest date of hire." Because Mr. Hopkins was laid off and then hired again by the same company, he is a "rehired employee" as that term is commonly understood.[5] In light of the exception for rehired employees, Mr. Hopkins reasonably assumed that the effective date of his LTD coverage was August 1, 1999: the effective date of LTD coverage based on his adjusted service date of March 28, 1999, the date he first was hired by Bank One.[6] It follows then, that Mr. Hopkins would reasonably conclude that, immediately upon his rehire on November 27, 1999, his LTD coverage was in effect. Given that the average person in Mr. Hopkins' circumstances would not have known that the pre-existing condition limitation applied to him as a rehired employee, the SPD lacks the clarity and completeness required by § 1022.

### 1. The Rehire Provision Is Not Inconsistent with Other SPD Provisions.

The rehire provision does not contradict any other SPD provision. In the first instance, the SPD states that the "[p]re-existing conditions . . . section applies to all new employees [and] current employees who haven't been covered under a Bank One LTD Plan for at least 12 months

---

[5] Neither the SPD nor the Plan defines the term "rehired employee".

[6] Prudential argues that the SPD cannot be read to support an effective date of LTD coverage that pre-dates the Plan's effective date of January 1, 2001 because the SPD states that, "effective January 1, 2001, this SPD replaces and supersedes any and all prior explanations and SPDs[.]" The SPD, however, expressly contemplates situations in which coverage was in effect prior to January 1, 2001, and further, in which coverage is governed by provisions otherwise superseded by the January 1, 2001 policy. (*See, e.g.*, R. at 280, 283.) Moreover, because Prudential bases this argument primarily on facts, including the cited provision, omitted from its Rule 56.1 statements, the Court is under no obligation to consider these facts in its holding. *See Malec v. Sanford*, 191, F.R.D. 581, 583 (N.D. Ill. 2000).

[prior to January 1, 2001]," and that "[i]f you had LTD coverage prior to January 1, 2001 for more than 12 months, the pre-existing condition exclusion will not apply to you unless you elect to increase your coverage." When read in tandem with the rehire exception, these sections indicate that the limitation does not apply to Mr. Hopkins because, as of his rehire on November 27, 1999, he had LTD coverage dating back to August 1, 1999, and thus, he had had LTD coverage for more than twelve months prior to January 1, 2001. Though this twelve month period of prior coverage is merely constructive – a fiction, that fiction is entirely consistent with the rehire exception and the adjusted service date.

Similarly, when read in tandem with the rehire provision, the SPD's Actively-at-Work provision indicates that the pre-existing condition does not apply to Mr. Hopkins. The Actively-at-Work provision states that "[t]here are no pre-existing condition exclusions after you've had 12 months of LTD coverage, as long as you're actively-at-work." This does not indicate, at least not with the requisite degree of clarity, that a claimant must have been *continuously* actively-at-work from the date he first became eligible until the date he sought LTD benefits. To read such a requirement into the provision would contradict the rehire provision. The LTD rehire provision allows eligibility to bridge back to the adjusted service date, necessarily contemplating a period of non-employment during which the claimant is not actively-at-work, and allowing eligibility to continue undisturbed after that period of non-employment. In addition, the provision does not require that the employee be actively-at-work during the prior 12-month period of LTD coverage – the punctuation and the verb tenses indicate that there are two separate requirements. The first, that the employee have "*had"* 12 months' prior coverage, is backward-looking and contains no actively-at-work requirement. The second, "as long as you're currently at work," looks to the present to determine whether the employee is *currently* actively-at-work. Mr. Hopkins satisfied

both requirements because he had 12 months of LTD coverage (based on his adjusted service date), and he was actively-at-work after his rehire.

Finally, the SPD's end-of-coverage provision does not indicate that Mr. Hopkins was subject to the pre-exiting condition limitation. The end-of-coverage provision states that "[y]our LTD coverage will end on the date: [y]ou don't make a required premium payment[; y]our employment status changes and you become ineligible for coverage[; or y]our employment with Bank One terminates[.]" This provision indicates that benefits end during the period that the employee was not employed and/or was not making payments. But Mr. Hopkins is not seeking benefits for that period. The provision does not address a rehired employee's coverage after his rehire and thus, does not affect the fate of a rehired employee whose LTD eligibility is determined based on his pre-termination adjusted service date. To interpret this provision otherwise, as ending coverage finally and without exception, would be irreconcilable with the rehire provision. A rehired employee has, by definition, endured a change in employment status and has, at one point, terminated his employment. If such an employee loses all right to LTD benefits based on his earlier employment, he cannot also have LTD eligibility calculated using his adjusted service date. The Court will not adopt a construction of the end-of-coverage provision that nullifies another provision of the SPD. *See AA Sales & Associates, Inc. v. JT&T Products Corp.*, 1999 WL 608695, *3 (N.D. Ill. 1999).

The Court does not find Mr. Hopkins' situation to be so unusual that it does not warrant clarification, rather than obfuscation, in the SPD. Notably, as in *Bowerman*, the confusion caused by the exception for rehired employees is of the insurer's own making. It would be unjust to allow Prudential to include this misleading rehire exception in the SPD, and then to penalize claimants for believing it.

Therefore, because the SPD failed to adequately inform Mr. Hopkins of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" in a manner that could "be understood by the average plan participant," the Court holds that the SPD does not satisfy the requirements of § 1022. Consequently, Prudential is estopped from denying benefits to Mr. Hopkins on the basis of the pre-existing condition provision.

**2.      Reliance Is Not Required Under § 1022.**

Prudential argues that Mr. Hopkins cannot rely upon the terms of the SPD over those of the Plan because he has not proved that he detrimentally relied on the SPD. A claimant, however, need not show detrimental reliance before a court can estop a denial of benefits based on the SPD's failure to satisfy § 1022. *See Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 587 (7th Cir. 2000). As discussed *supra*, a two-part framework exists which involves separate inquiries into compliance with 29 U.S.C. § 1022 and into the existence of a direct conflict between the SPD and the Plan. Although some cases arguably suggest a reliance requirement in regard to the second inquiry, the Seventh Circuit has imposed no such requirement on the first.[7] *See Mers*, 144 F.3d at 1022. If a reliance requirement did exist in order for Mr. Hopkins to obtain relief for Prudential's failure to create an SPD that complied with 29 U.S.C. § 1022, the record contains sufficient evidence that Mr. Hopkins detrimentally relied on the SPD when paying his premiums for LTD coverage. *See infra* II.C.

---

[7]  The Court acknowledges that at least one court in the Northern District of Illinois has required a claimant to prove reliance on the SPD before it would estop an insurer from denying benefits based on the SPD's failure to satisfy § 1022. *See Doyle v. Local S.E.I.U.*, 1999 WL 1044206, *12 (N.D. Ill. 1999) (finding SPD insufficient under § 1022, but denying summary judgment to claimant based on a material issue of fact regarding reliance). Notably, however, even that court admitted that the Seventh Circuit had not clearly imposed such a requirement, and this Court finds that there is none. *Id*.

**B.    The Plan and the SPD Conflict Analysis**

Assuming arguendo that the SPD satisfies § 1022, the Court would need to determine whether the SPD or the Plan governs the application of the pre-existing condition provision to Mr. Hopkins' claim.   While generally the plan governs, "[w]e allow a participant or beneficiary to rely on the SPD and estop the plan administrator from denying coverage because of terms not included in the SPD only if there is a direct conflict between the SPD and the underlying policy." *Mers*, 144 F.3d at 1024.   A direct conflict does not exist where the SPD is merely a clumsy paraphrase of the plan's clear language or where the proposed interpretation of the SPD is illogical.  *See Health Cost Controls*, 187 F.3d at 711-12; *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1051 (7th Cir. 1991) (finding no conflict where the plan clarified the SPD). Similarly, there is no direct conflict where the SPD is merely silent on an issue that the plan covers.  *Mers*, 144 F.3d at 1024.

The Court's first step thus is to determine whether there is a direct conflict between the terms of the Plan and the SPD.   The Court looks to the federal common law of contract interpretation to construe the terms of ERISA plans and determine whether there is a direct conflict.  *See Kamler v. H/N Telecom. Serv., Inc.*, 305 F.3d 672, 680 (7th Cir. 2002).  Generally, terms are interpreted in their ordinary and popular sense, as understood by a person of average intelligence and experience.  *Id.*  Specifically, exceptions to liability in insurance policy must be expressed "in unequivocal language" that reasonably assures that the insured understood and accepted those limitations.  *McNeilly v. Bankers United Life Assurance Co.*, 999 F.2d 1199, 1201 (7th Cir. 1993) (citations omitted); *see also Springs Valley Bank & Trust Co. v. Carpenter*, 885 F. Supp. 1131, 1141 (S.D. Ind. 1993) (noting that, under the contract principle of *contra proferentem*, "in cases of conflict between a summary plan description and a policy, the terms

which favor the participant will govern."), citing *Sturges v. Hy-Vee E'ee Benefit Plan & Trust*, 991 F.2d 479, 480-81 (8th Cir. 1993) and *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 542-43 (4th Cir. 1992) and *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1201 (10th Cir. 1992).

Where a term is ambiguous, it is construed strictly against the insurer. *Phillips v. Lincoln Nat'l Life Ins., Co.*, 978 F.2d 307-08 (7th Cir. 1993). A term is ambiguous if it is subject to more than one reasonable interpretation, *Brewer v. Protexall, Inc.*, 50 F.3d 453, 458 (7th Cir. 1995), and if there is a genuine and substantial uncertainty as to its meaning. *Phillips,* 978 F.2d at 313. The court will not create ambiguity where none exists. *Id.* at 308. And an ambiguity can be dispelled by clarifying language within the plan. *See Brewer*, 50 F.3d at 458.

## 1.    The SPD Conflicts with the Plan.

As discussed *supra* II.A., the SPD's rehire provision, as interpreted in its ordinary and popular sense, applies to Mr. Hopkins. The provision reads that, for a rehired employee, the effective date for LTD coverage is determined based on the rehired employee's adjusted service date, not his latest date of hire. The provision is consistent with other provisions in the SPD when read as an exception to the ordinary means of calculating the effective date. In contrast, the Plan contains no such exception for rehired employees. The Plan does not "clarify" the exception because it does not even mention the terms "rehired employee" or "adjusted service date" at all. This creates a direct conflict. *See Mers*, 144 F.3d at 1024.

Other Plan provisions do not dispel this conflict because they do not address the situation of a rehired employee. Specifically, the Plan states that "coverage under the [Plan] ends on the earliest of: The last day you are in active employment." Although this provision addresses the end of coverage based on termination of active employment, it does not address the fate of an

employee upon his rehire.  Similarly, the Plan provision covering temporary layoffs, which states that "[i]f you are on a temporary layoff, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins," only addresses the cessation of coverage during the layoff, not the effect that rehire would have on coverage.  Thus, these provisions do not clarify the conflict between the SPD's exception for rehired employees and the Plan's absence of such an exception.  Further, because these provisions do not address unambiguously the fate of rehired employees after they are rehired, they must be construed against Prudential, the draftor of both the Plan and the SPD.

**2.      The Disclaimer Is Unenforceable.**

Prudential argues that the Court cannot find a conflict and must base its determination solely on the Plan language because the SPD states that, "[i]n the event this summary differs in any way from the Plans, the actual terms of those documents will govern."  In accordance with several circuit court holdings, this Court finds that such a disclaimer is not enforceable by Prudential.  *See Pierce v. Security Trust Life Ins. Co.*, 979 F.2d 23, 26-7 (4th Cir. 1992) (explaining case law from various circuits holding that SPD governs when it conflicts with the Plan); *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566 (11th Cir. 1985); *see also Springs Valley Bank & Trust Co. v. Carpenter*, 885 F. Supp. 1131, 1142 (S.D. Ind. 1993).  To find otherwise would be inequitable.  In general, a claimant sees the SPD, not the plan, and he makes decisions based on the terms as they are set forth in the SPD.  It is unreasonable to allow insurers to place misleading or false information in the SPD, and then to allow them to rely on a disclaimer to renege on false promises.  Enforcement of such disclaimers would defeat the protections ERISA is intended to provide and would render 29 U.S.C. § 1022 a virtual nullity.

*See Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 788 (7th Cir. 1996). Consequently, this disclaimer does not disturb the Court's finding that the Plan and the SPD are in conflict.

### 3. Mr. Hopkins Detrimentally Relied on the SPD.

It is uncertain under this Circuit's conflicting precedent whether or to what extent a claimant must rely on the terms of the SPD when an SPD and a plan conflict. *Compare Health Cost Controls*, 187 F.3d at 711 (stating plan description controlled conflict "unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment") and *Helfrich v. Carle Clinic Assoc., P.C.*, 328 F.3d 915, 918 (7th Cir. 2003) (stating rule that summary plan description trumps the plan itself, "if relied on") with *Spitz v. Tepfer*, 171 F.3d 443, 448 (7th Cir. 1999) ("Whether or not Tepfer relied on that SPD language is beside the point, under decisions that have held that SPD language trumps contrary plan language"), citing *Mers*, 144 F.3d at 1023 and *Williams v. Midwest Operating Eng'rs Welfare Fund*, 125 F.3d 1138, 1141-42 (7th Cir. 1997) (discussing whether and when reliance may be required and what constitutes reliance).

Even assuming that detrimental or other reliance is required, Mr. Hopkins detrimentally relied on the SPD when he paid premiums for LTD benefits, believing that he was eligible for such benefits without being subject to the pre-existing condition limitation. Specifically, the record indicates that Bank One employees pay premiums for LTD benefits above the basic, 50% level. As of 2000, Mr. Hopkins had elected increased LTD coverage at the 70% level. According to the Plan, increased LTD benefits are paid out-of-pocket, and his Bank One election sheet indicates this election and payment. Similarly, Prudential's phone records indicate that he received increased LTD coverage in 2000 and that, when informed by a Prudential representative that his 70% coverage had been reduced to 50% coverage on January 1, 2001, he was "very upset

with the bank because he has been paying for this coverage." In light of these facts and the absence of any fact showing that Mr. Hopkins failed to pay those premiums after his rehire, the Court finds that Mr. Hopkins detrimentally relied on the SPD.

Therefore, because the SPD and the Plan directly conflict as to whether the pre-existing condition limitation applies to rehired employees and because Mr. Hopkins detrimentally relied on the SPD, the SPD will govern the decision to award benefits.

**4.      Under the SPD, the Pre-Existing Condition Limitation Does Not Apply.**

Under the terms of the SPD, Mr. Hopkins is entitled to benefits because the pre-existing condition limitation does not apply to him. The SPD states that "[i]f you are a *rehired employee*, your LTD eligibility is calculated using your adjusted service date, not your latest date of hire." Mr. Hopkins began working at Bank One on March 28, 1999. He worked at Bank One until November 2, 1999, when he was laid off. Bank One hired Mr. Hopkins again on November 27, 2000. As the term "rehired" is commonly understood, Mr. Hopkins is a rehired employee. As such, his LTD eligibility date is determined, by virtue of his adjusted service date, to be August 1, 1999. Thus, from his date of rehire, November 27, 2000, Mr. Hopkins was deemed to have had constructive LTD coverage dating back to August 1, 1999.[8] Furthermore, the SPD states that, "[i]f you had LTD coverage prior to January 1, 2001 for more than 12 months, the pre-existing condition exclusion will *not* apply to you unless you elect to increase your coverage[.]" (italics original). Based on his actual and constructive LTD coverage dating back to August, 1,

---

[8] The Court acknowledges that the rehire provision enables claimants who leave their employment and later discover that they suffer from a debilitating ailment to return to their prior employment and receive LTD benefits without being subject to a pre-existing condition limitation. The provision is limited though by the fact that such an employee could not avoid the pre-existing condition limitation unless he also had 12 months of LTD coverage (actual or constructive), was covered under his employer's prior plan on December 31, 2000, and became covered under the Plan by January 31, 2001. Moreover, the Court does not believe that rehire provision would enable a rehired employee to receive LTD benefits for his period of non-employment. The rehire provision has no effect, obviously, until an employee is rehired, and it only effects receipt of benefits thereafter.

1999, Mr. Hopkins had had over 12 months of LTD coverage as of December 31, 2000. Consequently, under the plain language of this provision, the pre-existing condition limitation does not apply to him. Similarly, the SPD's Actively-at-Work rules provides that "[t]here are no pre-existing condition exclusions after you've had 12 months of LTD coverage, as long as you're actively-at-work." Because Mr. Hopkins had had over 12 months of actual and constructive LTD coverage and because he was actively at work from November 27, 2000 until the time he left due to disability, this provision also indicates that the pre-existing condition limitation does not apply to him. Therefore, because the pre-existing condition does not apply to Mr. Hopkins and because Prudential raised no other basis for denying benefits, Mr. Hopkins is entitled to LTD benefits.[9]

## III. Remedy

Mr. Hopkins is entitled to 21 months' LTD benefits. Under the Plan, LTD benefits for disabilities due to mental illness are limited to a 24-month pay period during the claimant's lifetime. The parties agree that this provision applies to Mr. Hopkins' claim, that Mr. Hopkins' benefit amount would be $2,566.67 per month, and that Prudential already has paid three months of benefits, totaling $9,588.01, for the period between October 31, 2001 and January 31, 2002. Thus, the Court finds that Mr. Hopkins is entitled to receive an additional 21 months' of LTD benefits, for the period between February 1, 2002, and October 31, 2003, totaling $53,900.07.[10]

## A. Prudential is Not Entitled to Offset Unless Mr. Hopkins Fails to Follow the Plan's Procedures Regarding SSDBs.

Prudential argues that any award of LTD benefits must be offset by the amount of Social Security Disability Benefits ("SSDBs") that Prudential estimates that Mr. Hopkins is entitled to

---

[9] Prudential did not argue to this Court or in its last decision letter that Mr. Hopkins was not disabled within the meaning of the Plan.

[10] Prudential did not assert to this Court that Mr. Hopkins should be denied benefits after January 31, 2002, because he was not disabled.

receive due to his disability. The Plan allows Prudential to deduct any sources of income, which include SSDBs to which the claimant is entitled. Mr. Hopkins argues that Prudential is not entitled to offset because: 1) because Prudential awarded three months of LTD benefits without applying the offset provision; 2) because Mr. Hopkins has never received any SSDBs; and 3) because Prudential's determination that Mr. Hopkins might be entitled to SSDBs is in error.

Mr. Hopkins' first two arguments are unpersuasive. Prudential's alleged failure to collect three months of SSDB offset constitutes an error in processing the claim. Because the Plan gives Prudential "the right to recover any overpayments due to . . . any error Prudential makes in processing a claim," Prudential retains the right to seek offset despite its failure to do so earlier. Similarly, although there is no evidence that Mr. Hopkins has received SSDBs, Prudential's right to offset is not conditioned on Mr. Hopkins' receipt of SSDBs. The Plan provides that, if SSDBs have not been awarded, but Prudential "determine[s] that [the claimant] may qualify" for such benefits, Prudential may estimate the amount of those benefits to which the claimant is entitled and deduct that amount from the LTD benefits due under the Plan. Thus, Prudential may be entitled to offset for SSDBs regardless of whether Mr. Hopkins ever received SSDBs.

Last, Mr. Hopkins argues that Prudential's determination that he may be eligible for SSDBs is erroneous. Mr. Hopkins argues that, under the relevant Social Security Administration ("SSA") regulations, he was not eligible for SSDBs. The Plan itself is silent as to how that determination should be made. Given Mr. Hopkins arguments that he is disabled under Prudential's Plan and the medical evidence of potential disability in the record, the Court agrees with Prudential's conclusion that Mr. Hopkins "may qualify" for SSDBs.

The application of the offset provision was not relevant (and therefore, not raised) in any of Mr. Hopkins' appeals or Prudential's decisions at the administrative level. Consequently, Mr.

Hopkins had no opportunity to utilize the Plan's provision for eliminating the offset. This provision states that Prudential will not reduce the LTD benefits by the estimated amount of SSDBs if the claimant does the following: 1) applies for benefits; 2) appeals any denial to all administrative levels Prudential feels are necessary; and 3) signs Prudential's Reimbursement Agreement form, promising to pay Prudential any overpayment caused by an award. Thus, the Court orders Prudential to give Mr. Hopkins the opportunity to utilize that three-part process. Prudential should provide Mr. Hopkins with a Reimbursement Agreement form and Mr. Hopkins should remit that completed form to Prudential within 45 days of receiving the form. If Mr. Hopkins remits the completed form by the required time, he will not be immediately liable for the offset amount, but he then must apply for SSDBs and appeal any denial to all administrative levels that Prudential feels are necessary. If Mr. Hopkins fails to comply with these additional requirements, he will be liable to Prudential for the offset amounts.

**B.     The Court Awards Pre-Judgment Interest.**

Mr. Hopkins also seeks pre-judgment interest on LTD benefits due. There is a presumption of pre-judgment interest awards in ERISA cases. *See Fritcher v. Health Care Svcs. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002), citing *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991). Finding no evidence to rebut this presumption, the Court, in its discretion, awards prejudgment interest at the prime rate from the date that the benefits should have been paid to him; the applicable interest will be computed without any compounding. *See Fritcher v. Health Care Svcs. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002); *DiPietro v. Prudential Ins. Co.*, 2004 WL 626818, *11 (N.D. Ill. 2004).

**C.  The Court Will  Not Award Attorney's Fees or Costs.**

The Court will not award attorneys' fees or costs.  In ERISA cases, the court may, in its discretion, award a reasonable attorneys' fees and costs to either party.  29 U.S.C. § 1132(g)(1) (2005); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir. 2000).  There is a "modest presumption" that the prevailing party is entitled to such an award, though that presumption is rebuttable.  *Id.* (citing cases).  There are two possible tests for determining whether attorneys' fees are appropriate in a given case.  *Id.*  Under the first test, the Court asks whether the losing party's position was substantially justified. *Id.* (citing cases).  Under the second test, the Court looks to five factors: 1) the degree of the offending party's culpability or bad faith; 2) the degree that the offending party can personally satisfy such an award; 3) whether such an award would have a deterrent effect on similarly situated parties; 4) the amount of benefit conferred on other plan members; and 5) the relative merits of the parties' positions.  *Id.*, citing *Quinn v. Blue Cross & Blue Shield Ass'n.*, 161 F.3d 472, 478 (7th Cir. 1998).  Under either test, the essential question is:  "Was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?"  *Id.*, quoting *Quinn*, 161 F.3d at 478.

Applying the first test, the Court finds that Prudential's positions were substantially justified in light of the law prior to *Diaz v. Prudential*, under which Prudential's decision might have been subject to more deference from the Court.  Applying the factors of the second test, the Court finds that Prudential would be able to satisfy such an award, that such an award would deter Prudential from including the misleading rehire provision in future SPDs, and that such a correction would benefit other Plan members.  Nonetheless, Prudential does not appear to have included the rehire provision or pursued this action in bad faith, and its position is not devoid of

merit. Turning to the "essential question," Prudential's final decision letter is adequately reasoned and supported by record evidence, if not by the SPD. The Court finds that Prudential's actions do not reflect an intent to harass Mr. Hopkins, but merely to defend its final decision. An award of costs and attorneys' fees is not warranted in such a case.

## Conclusion and Order

Reviewing de novo Prudential's construction of the Plan and denial of benefits, Prudential is estopped from denying benefits based on the pre-existing condition limitation because the SPD does not satisfy the requirements of 29 U.S.C. § 1022. Alternatively, benefits are warranted because the SPD conflicted with the Plan in regard to the pre-existing condition limitation for rehired employees, and Mr. Hopkins had relied on the SPD in paying for increased LTD coverage. Prudential is ordered to pay LTD benefits to Mr. Hopkins for the period between February 1, 2002 and October 31, 2003, in the amount of $53,900.07. Prudential is entitled to an offset only if Mr. Hopkins fails to remit a completed Reimbursement Agreement within the required time, apply for SSDBs and appeal any denial to all administrative levels that Prudential feels are necessary. In addition, Prudential is ordered to pay pre-judgment interest, calculated at the prime rate in accordance with this opinion. Prudential is not liable for Mr. Hopkins' attorney's fees or costs.

So ordered.


_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 15, 2006